Peter A. Quinn, J.
In this article 78 proceeding the peti-
tioner seeks to annul the determination of the Board of Responsibility dated April 28, 1967 (a) that petitioner is not a responsible bidder within the meaning of section 343 of the New York City Charter and the resolution of the Board of Estimate and is not to be awarded the contract to furnish and deliver milk and cream during the month of May, 1967 to city institutions; (b) revoking the contract to Sealtest; (c) awarding said contract to petitioner.
On April 21, 1967, Marvin Gersten, Acting Commissioner of the Department of Purchase, requested the Comptroller to convene a meeting of the Board of Responsibility to inquire into the responsibility of petitioner who was the low biddder on a contract to be awarded to furnish milk and cream during May, *401 1967 to city institutions. The request was also as to inquiring as to the responsibility of other bidders.
The inquiry was prompted by a letter from the District Attorney to the Mayor as well as a statement attached to the bid of the petitioner which indicated that employees of petitioner had refused to sign a waiver of immunity before the Grand Jury and the wide-spread newspaper publicity resulting from public investigations involving the transactions and business dealings of the milk industry.
The board accorded the petitioner an opportunity to answer questions bearing on its inquiry. The petitioner appeared by Herbert E. Whitehead, its metropolitan district manager, who asserted his constitutional right and refused to answer germane questions.
The determination by the Board of Responsibility was plausibly based upon the petitioner’s failure to answer questions which bore on the practices and policies of the petitioner during the period prior to the submission of the bids. And petitioner failed to produce anyone with personal knowledge of the facts to admit or deny that it had acted eollusively during the period in question.
“ Under the provisions of section 343 of the New York City Charter the award of contracts on public letting must be made to the ‘ lowest responsible bidder. ’ That term does not mean one who is only pecuniarily responsible but one who also possesses moral worth (Matter of Sikorski v. Board of Educ. of City of New York, N. Y. L. J., July 10, 1937, p. 100, col. 4, aifd. 253 App. Div. 824.) ” “ and authorizes the awarding agency to investigate and consider the background of the bidder before making its award” (Picone v. City of New York, 176 Misc. 967, 969). Nor is there any statutory requirement that the Board of Estimate, or its duly delegated agent, the Board of Responsibility, hold a hearing. (Matter of New England Dredge & Dock Co. v. City of New York, N. Y. L. J., Aug. 15, 1961, p. 4, col. 8 [Backer, J.], affd. 15 A D 2d 641.)
The respondents had a right and a duty to conduct the inquiry and the petitioner was afforded an opportunity to furnish the answers as to whether its bids were tainted by collusion. The petitioner chose to submit as witnesses an employee who refused to answer pertinent questions,, resting on his constitutional privilege and counsel whose testimony of necessity was hearsay. Therefore petitioner’s claim of a violation of due process is without merit. So, too, is its contention that it was denied equal protection of the laws. The administration by State officers of a statute fair on its face is not a denial of *402 equal protection unless there is shown to be present an intentional or purposeful discrimination. No such showing has been made here. Finally, it should be noted that the privilege against self incrimination is a personal one and does not apply to corporations. (Umted States v. White, 322 U. S. 694.)
The petition is dismissed.